UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JOSEPH,<br><br>Defendant | Criminal No.   21cr10338<br><br>Violations:<br><br>Count One: Conspiracy to Commit Bank Fraud and Wire Fraud<br>(18 U.S.C. § 1349)<br><br>Count Two: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Count Three: Bank Fraud<br>(18 U.S.C. § 1344)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. The defendant, PATRICK JOSEPH ("JOSEPH"), resided in Stoughton, Massachusetts.

2. Co-Conspirator 1 ("CC-1") resided in Stoughton, Massachusetts.

3. Individuals 1 and 2 were acquaintances of JOSEPH who resided in Massachusetts.

4. Cross River Bank was a privately held financial services and technology company based in Fort Lee, New Jersey. Cross River Bank was a financial institution within the meaning of Title 18, United States Code, Section 20.

5. Fundbox, Inc. was a privately held financial technology company based in San Francisco, California.

6. The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic. The CARES Act also provided funding for forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP"). The PPP offered forgivable loans of up to $20,833 to small businesses and independent contractors affected by the COVID-19 pandemic. The loan proceeds could be used for payroll and certain other business expenses.

8. In order to obtain a PPP loan, a qualifying business or independent contractor business was required to submit a loan application signed by an authorized representative of the business acknowledging the program rules and making certain affirmative certifications, including details about the business and documents to verify its income. PPP loan applications were processed by participating lenders.

9. If a PPP loan application was approved, the participating lender funded the PPP loan using its own money, but the loan was guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

2

10. Cross River Bank and Fundbox participated in the PPP as lenders.

Overview of the Conspiracy and the Scheme to Defraud

11. From in or about April 2020 to in or about April 2021, JOSEPH conspired with CC-1 and others known and unknown to the Grand Jury to defraud financial institutions and the SBA by submitting fraudulent PPP loan applications.

Objects and Purpose of the Conspiracy

12. The objects of the conspiracy were to commit bank fraud and wire fraud by submitting fraudulent loan applications to PPP lenders. The principal purpose of the conspiracy was for the conspirators to make money.

Manner and Means of the Conspiracy and the Scheme to Defraud

13. Among the manner and means by which JOSEPH, CC-1, and others known and unknown to the Grand Jury carried out the conspiracy and the scheme to defraud were the following:

 a. Recruiting individuals who were willing to provide their personal information for use in fraudulent PPP loan applications;

 b. Charging the individuals $5,000 each to have JOSEPH and CC-1 obtain PPP loans of approximately $20,000 in their names;

 c. Falsifying information in PPP loan applications, including by falsely identifying the applicants as independent contractors who were eligible for PPP loans, and falsely claiming hundreds of thousands of dollars in business and independent contractor income to support claims at or near the maximum allowable loan amount;

d.	Preparing falsified tax forms—specifically, Internal Revenue Service ("IRS") Schedule C, Profit or Loss from Business—that appeared to support the applicants' purported incomes; and

e.	Submitting the fraudulent PPP loan applications via wire communications in interstate commerce to financial institutions and financial technology companies that were PPP lenders, including Cross River Bank, Fundbox, and others.

### Acts in Furtherance of the Conspiracy and the Scheme to Defraud

14.	From in or about April 2020 to in or about April 2021, CC-1, JOSEPH, and others known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*The First PPP Loan for JOSEPH*

15.	On or about June 9, 2020, CC-1 sent JOSEPH a text message requesting a blank check bearing JOSEPH's name to be used in a fraudulent PPP loan application.

16.	On or about that same day, JOSEPH sent CC-1 false information to include in the PPP application, including that he worked as a graphic designer and the address of a location in Dorchester, Massachusetts where he purportedly worked.

17.	On or about June 10, 2020, CC-1 created a fraudulent IRS Schedule C that falsely listed JOSEPH's occupation as "Graphic Design," listed as his employment address the location of a printing business where JOSEPH did not actually work, and falsely claimed that JOSEPH had generated $116,500 in gross receipts for the tax year 2019.

18.	On or about June 15, 2020, CC-1 sent an application to Fundbox, via wire communication in interstate commerce, for a PPP loan in JOSEPH's name. The loan application

4

falsely claimed that JOSEPH worked in graphic design, appended the falsified Schedule C tax form that CC-1 had created, and requested that $20,493 in PPP funds for "payroll" be transferred to a bank account that JOSEPH controlled.

19. On or about June 17, 2020, CC-1 sent a text message to JOSEPH stating, "Approved for $20,492, but they can only hold it until COB tomorrow."

*The First PPP Loan for Individual 1*

20. On or about June 17, 2020, JOSEPH sent a text message to CC-1 asking, "Would we be able to do one for [Individual 1]."

21. On or about June 18, 2020, CC-1 created a fraudulent Schedule C in the name of Individual 1 that falsely identified her business as "Health Services" and claimed receipts of $108,910 for the tax year 2019.

22. On or about June 19, 2020, CC-1 sent a text message to JOSEPH stating, "I called [Individual 1] but she wasn't available. She is all set. The next step is the same as yours."

23. On or about June 20, 2020, CC-1 submitted a PPP loan application to Fundbox, via wire communication in interstate commerce, in the name of Individual 1. The loan application falsely claimed that Individual 1 worked in healthcare, contained the falsified Schedule C for Individual 1, and requested $20,580 in PPP funds for "payroll."

*The Second PPP Loans for JOSEPH and Individual 1*

24. On or about January 20, 2021, CC-1 sent a text message to JOSEPH stating, "You and [Individual 1] are eligible to apply for a second PPP loan. If you want proceed, I will need a bank statement for the month of February 2020 for each of you."

25. On or about January 20, 2021, JOSEPH replied, "Ok thanks I was just about to call you lol I'll have both our statements ready for u next month."

26. On or about January 29, 2021, CC-1 applied to Cross River Bank for a second PPP loan in the name of JOSEPH. The loan application requested an additional $20,491 based on the same fraudulent representations that were used to obtain the first PPP loan for JOSEPH, including that he worked as a graphic designer in Dorchester, Massachusetts.

27. On or about February 12, 2021, JOSEPH sent a text message to CC-1 asking, "How me and [Individual 1] looking[?]"

28. On or about February 12, 2021, CC-1 replied by text message, "Still waiting for the 2nd approval."

29. On or about February 17, 2021, CC-1 applied to Cross River Bank for a second PPP loan in the name of Individual 1. The loan application requested an additional $20,580 based on the same fraudulent representations that were used to obtain the first PPP loan for Individual 1.

*Additional Loans*

30. On or about June 23, 2020, JOSEPH sent a text message to CC-1 stating, "What's up would we be able to do a few more people[?]"

31. CC-1 replied, "They are going to open up the PPP program again until Aug 8."

32. On or about March 16, 2021, CC-1 and JOSEPH exchanged text messages discussing their plans to prepare and submit fraudulent PPP loan applications for other individuals in exchange for money. JOSEPH instructed CC-1 to avoid creating a "paper trail," and not to submit a fraudulent application for one applicant until she paid JOSEPH and CC-1 $5,000.

*The PPP Loan for Individual 2*

33. On or about April 7, 2021, JOSEPH provided CC-1 a copy of Individual 2's driver's license, bank statements, 2019 tax return, and a voided check. Individual 2's tax return indicated that she was not self-employed, and did not include a Schedule C.

34. During a telephone call on or about April 7, 2021, CC-1 and JOSEPH discussed possible occupations to list on a fraudulent PPP loan application in the name of Individual 2. After JOSEPH suggested that Individual 2 worked as a "hair dresser," CC-1 suggested that "if she does daycare or something like that, that will work better."

35. In a telephone call on or about April 13, 2021, CC-1 and JOSEPH further discussed Individual 2's PPP loan application. CC-1 told JOSEPH that "[i]t wouldn't make sense to do . . . daycare services for her, cause it would raise a lot of, a lot of questions. . . . So, maybe like a CNA [Certified Nursing Assistant] or makeup artist might be the better route to go." JOSEPH responded, "Yeah."

36. On or about April 18, 2021, CC-1 applied to Cross River Bank for a PPP loan in Individual 2's name. The loan application falsely claimed that Individual 2 worked in health services, contained a falsified Schedule C tax form claiming gross receipts of $107,315 for the tax year 2019, and requested $20,832 in PPP funds for "payroll."

## COUNT ONE
## Conspiracy to Commit Bank Fraud and Wire Fraud
## (18 U.S.C. § 1349)

The Grand Jury charges:

37.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

38.     Between in or about April 2020 and in or about April 2021, in the District of Massachusetts and elsewhere, the defendant,

## PATRICK JOSEPH,

conspired with CC-1 and others known and unknown to the Grand Jury to commit the following offenses:

   a. bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud financial institutions, including Cross River Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of financial institutions, including Cross River Bank, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

   b. wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## Wire Fraud
## (18 U.S.C. § 1343)

The Grand Jury charges:

39. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

40. On or about June 15, 2020, in the District of Massachusetts and elsewhere, the defendant,

## PATRICK JOSEPH,

having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, to wit: a PPP loan application that CC-1 submitted to Fundbox on behalf of JOSEPH and that falsely claimed, among other things, that JOSEPH worked in graphic design, and that included a falsified Schedule C tax form, and requested PPP funds for "payroll."

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE
## Bank Fraud
## (18 U.S.C. § 1344)

The Grand Jury charges:

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

42. Between in or about January 2021 and in or about April 2021, in the District of Massachusetts and elsewhere, the defendant,

## PATRICK JOSEPH,

did knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, Cross River Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of Cross River Bank, by means of materially false and fraudulent pretenses, representations, and promises, in that JOSEPH caused a falsified application to be submitted to Cross River Bank seeking a PPP loan.

All in violation of Title 18, United States Code, Section 1344.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

43. Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 1343, 1344, and 1349, set forth in Counts One through Three, the defendant,

### PATRICK JOSEPH,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

44. If any of the property described in Paragraph 43, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 43 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

12

A TRUE BILL

_____
FOREPERSON

_____
CHRISTOPHER J. MARKHAM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: November 22, 2021
Returned into the District Court by the Grand Jurors and filed.

/s/ Lisa Belpedio at 3:05 pm
DEPUTY CLERK