UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Case No. | 21-cr-10231-FDS |
| | ) | | 21-cr-10338-FDS |
| PATRICK JOSEPH, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Patrick Joseph pled guilty to a one count indictment charging him with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and cocaine base. 21-cr-10231-FDS.   The defendant also pled guilty to a three-count indictment charging him with conspiracy to commit bank fraud and wire fraud (Count One), wire fraud (Count Two), and bank fraud (Count Three).   21-cr-10338-FDS.   The government anticipates that there will be one major objection for the Court to resolve at sentencing; whether the defendant was a manager or supervisor in the drug conspiracy that involved five or more participants or was otherwise extensive.

The parties have agreed to a sentence between 120 and 156 months; a fine within the guideline sentencing range, unless the Court finds that the Defendant is not able, and is not likely to become able, to pay a fine; 5 years of supervised release; and the $400 mandatory special assessment.   The parties have further agreed that forfeiture and restitution will be determined at sentencing.   The advisory guideline sentencing range based upon the calculation in the PSR is 151 to 188 months of imprisonment.   PSR ¶ 191.

The government submits that the evidence more than amply supports that the defendant was a manager or supervisor in a drug conspiracy that involved five or more participants.   The

defendant was charged along with 10 co-defendants. He had direct contact with at least seven co-defendants. Even, if the Court does not find that the drug conspiracy involved five or more individuals, the Court can readily find that the drug conspiracy was extensive, involving the international importation of cocaine to Puerto Rico and then a network of mailings to Massachusetts. The defendant was surely a supervisor, **_at least_** to his brother Patrick Rinvil, who was recently released from New York state prison and entered the drug conspiracy through the defendant.

For the reasons discussed herein, the government recommends a sentence at the lower end of the advisory guideline sentencing range and at the top-end of the agreed upon disposition, 156 months of imprisonment.

### I.   ADVISORY SENTENCING GUIDELINES

The government agrees with the PSR's final calculation of the defendant's total offense level and criminal history category.

#### A. Drug conspiracy, 21-cr-10231-FDS.

As noted in the PSR and plea agreement, the parties agree that the defendant is responsible for at least 15 kilograms but less than 50 kilograms of cocaine. PSR ¶ 117, p.53; Doc. 411, Plea Agreement at 2. The defendant objects to specific drug-weight calculations in the PSR but agrees with the resultant base offense level. PSR, p.53. The parties agree that the defendant should receive a two-level enhancement because he maintained a premises for the purposes of distributing a controlled substance at 100 Liberty Place. PSR ¶ 118; Doc. 411, Plea Agreement at 2. The defendant, however, objects that this enhancement should apply to the apartment at 1 Royal Crest Drive. PSR, p. 54. The government and probation agree that the

defendant should receive a three-level enhancement because he was a manager or supervisor. PSR ¶ 120.  The defendant objects to this enhancement.  PSR, p.56.[1]  Should the Court adopt the government and probation's calculations, the resulting adjusted offense level is 37.

### B. The defendant was a manager or supervisor.

Prior to imposing a role-in-the-offense enhancement pursuant to U.S.S.G. § 3B1.1(b), the Court must first make two determinations—a scope determination and a status determination. *United States v. Joyce,* 70 F.3d 679, 682 (1st Cir. 1995).   In the scope determination, the Court must find that the criminal scheme involved five or more participants or was otherwise extensive; in the status determination, the Court must find that the defendant managed or supervised some portion of the scheme.  *Id.; see United States v. Nuñez,* 840 F.3d 1, 5 (1st Cir. 2016); *United States v. Voccola,* 99 F.3d 37, 44 (1st Cir. 1996).   Proof of the latter is established "if there is evidence that a defendant, in committing the crime, exercised control over, or was otherwise responsible for overseeing the activities of, ***at least one other person***."  *Voccola,* 99 F.3d at 44 (quoting *United States v. Savoie,* 985 F.2d 612, 616 (1st Cir. 1993) (emphasis added). In making both of these determinations, this Court need not look any further than the defendant's own objection.   "He did not regularly instruct any other participants to carry out the business of the operation.   On very rare occasions he asked his brother to help him and paid him to do so." PSR, p.56.

---

[1] Should the Court sustain the defendant's objection, the defendant would be eligible for a two-level reduction under USSG § 4C1.1(a) (Zero-Point Offender).    The defendant does not qualify for relief under USSG § 5C1.2 (Safety Valve).

The defendant had personal contact with at least seven participants in the drug conspiracy:   1) His brother, Patrick Rinvil, 2) Donald Cue, 3) Cristian Alvarado-Deleon, 4) Alvarado-Deleon's family member, 5) Robert Monteiro, 6 ) Night Menard, and 7) Felix Baez Munoz.   Having identified at least seven criminally responsible individuals to this drug conspiracy that the defendant knew and interacted with, the numerosity requirement is satisfied.

The defendant's objection highlights that he supervised **_at least_** his brother, Patrick Rinvil.  *See, e.g., United States v. Acosta-Colon,* 741 F.3d 179, 205 (1st Cir. 2013) (for the role-in-the offense enhancement to apply, the court must find that "the defendant managed or supervised one or more of the other participants in that [criminal] activity") (quoting *United States v. Garcia-Hernandez,* 659 F.3d 108, 114 (1st Cir. 2011)); *Garcia-Hernandez,* 659 F.3d at 114-15 (even if the defendant had "managed just one [participant], section 3B1.1(b) would nevertheless apply to him").   Rinvil was recently paroled from prison when he entered this drug conspiracy through the defendant.   PSR ¶ 15-22.   Notably, the defendant did not expose himself to law enforcement by retrieving drug-laden parcels delivered from Puerto Rico.   He instead sent others, including his brother, to retrieve these parcels and deliver them to stash locations.   *See* PSR ¶ 48-60.   During surveillance in November 2020, agents watched as the defendant circled the area where a drug parcel would be delivered.   The defendant never retrieved the parcel after it was delivered.   Another individual retrieved the drug-laden parcel and brought it to a stash location used by the organization, 1 Royal Crest Drive.   The defendant did not bring the parcel into the stash location, the other individual did.   PSR ¶ 56.   After the parcel was opened, Rinvil and the other individual removed the remnants of the parcel from the

4

stash location. PSR ¶ 58. This pattern of behavior is consistent with the defendant directing others to facilitate the movement of cocaine after drug parcels were sent through the mail.

Further evidence that the defendant supervised or managed the drug conspiracy comes from the defendant's own words. During an intercepted call in April 2021, Donald Cue expressed frustration and displeasure that Rinvil was living at the stash location at 100 Liberty Place. PSR ¶ 79. Instead of acquiescing to Cue, the defendant instructed Cue to stop meeting drug customers at "base." Instead, he told Cue to send drug customers to see Night Menard, "Have them go see Night… Start going by Night or just have Night take care of everybody. That's the way to go." PSR ¶ 79.

Still more evidence of the defendant's role is that he managed the return of a bad batch of cocaine. In April 2021, Cue informed the defendant that he received complaints about the poor quality cocaine. PSR ¶¶ 67-73, 81-82. In response, the defendant agreed to take back the bad batch of cocaine from Cue and discuss plans with Alvarado-Deleon. PSR ¶ 70. While the defendant might not have been the ultimate decision maker about the bad batch of cocaine, he agreed to take back the cocaine from Cue, further indicating his managerial responsibilities in the drug conspiracy when customers were not satisfied.

The defendant also had knowledge of the full scope of this conspiracy. In an intercepted phone call, the defendant explained how drugs were sent from "D.R. (Dominican Republic)" to "P.R. (Puerto Rico)" before they were mailed to Massachusetts. PSR ¶ 85. This demonstrated the defendant's relationship with the international drug supplier, his knowledge of the drug importation route, and his access to dozens of kilograms of cocaine. Further, the call

demonstrated that other, locally based drug dealers could order kilograms of cocaine through the defendant.

Further evidence of the defendant's role was found in the defendant's cell phone. The defendant sent Rinvil to retrieve a parcel and sent an image of a USPS tracking application to him. *See* Exhibit A. Exhibit A shows an excerpt of a conversation between the defendant (in green) with Rinvil (in blue). The defendant sent the image on page 3 and stated, "It looks like gonna be today let shorty know." Rinvil replied, "Otw (on the way) now." This further corroborates that the defendant sent his brother to retrieve parcels to keep the conspiracy operating. The defendant did not just send his brother to retrieve parcels, he sent others to wait for the delivery of parcels. *See* Exhibit B. Exhibit B is an excerpt of text messages with an unindicted co-conspirator. The defendant (in green) sent a photograph of two people sitting on the steps of a residence followed by, "They waithi (waiting)." The defendant followed up with a photograph of a USPS delivery van, and informed the individual, "She said call the office," suggesting a problem with the delivery. The photographs attached to this thread will be available at the sentencing hearing.

The defendant's cellphone also had examples wherein he informed Alvarado-Deleon that he sent others, including Rinvil, to retrieve drug parcels. PSR ¶ 91. The defendant contends that he received instructions from Alvarado-Deleon and his family member. Alvarado-Deleon may have been the local contact for his family member. Alvarado-Deleon may have even relayed instructions to the defendant. Alvarado-Deleon's role does not negate the defendant's culpability for supervising and managing others in this complex drug conspiracy. Notably, the government is not seeking a four-level enhancement that would indicate the defendant was an

6

organizer or leader. The government's argument for a three-level enhancement comports with the facts of this case and case law that the defendant supervised at least one other person in this extensive drug conspiracy.

In sum, the evidence is more than sufficient to support the imposition of the three-level leadership enhancement pursuant to U.S.S.G. § 3B1.1(b).

### C. Fraud conspiracy, 21-cr-10338-FDS

The parties agree to the guideline calculations detailed in the PSR for the fraud conspiracy. PSR ¶¶ 109-114; Doc. 90, Plea Agreement at 2. The resulting adjusted offense level for the fraud conspiracy is 17.

### D. Multiple Counts Adjustment and Acceptance of Responsibility

The government agrees with the PSR that the adjusted offense level for the drug conspiracy is more than 9 levels more serious than the adjusted offense level for the fraud conspiracy. As a result, the adjusted offense level for the multiple counts is 37. The parties agree that the defendant has accepted responsibility for his crimes and is entitled to a three-level reduction. The resulting total offense level is 34.

There is no dispute that the defendant is in criminal history category I. PSR ¶ 134. Based upon a total offense level of 34 and a criminal history category I, the advisory guideline sentencing range is 151 months to 188 months. PSR ¶ 191.

## II.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Consistent with the plea agreement, the government recommends a sentence of 156 months, which is near the low-end of the guideline sentencing range as calculated by the

7

government and probation.   Consideration of the § 3553(a) factors demonstrates that a sentence of 156 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

    A.    **Nature of the Offenses**

The defendant managed a large-scale drug trafficking operation that involved the shipment of packages each containing two kilograms of cocaine through the mail from Puerto Rico to Massachusetts.   The cocaine inside these packages was typically hidden inside innocuous consumer goods, such as an air fryer.   The packages were addressed for delivery to various addresses in Massachusetts and Rhode Island, where a member of the conspiracy (including those supervised by the defendant) picked up the cocaine packages and transported the packages to various locations maintained by the conspiracy.   Often times, the defendant literally supervised the delivery by circling the delivery location apparently conducting surveillance.

The defendant not only facilitated the shipment of kilograms of cocaine into Massachusetts, but he also maintained stash locations for these drugs.   As evidenced earlier in this investigation, the defendant had drug-laden parcels brough to 1 Royal Crest Drive and 49 Woolson Street.   49 Woolson Street was the defendant's family's residence and the government is not alleging that this location was used as a stash location.   It is clear, however, that 1 Royal Crest Drive and 100 Liberty Place were used as stash locations.   Not only were parcels brought to these stash locations under the defendant's supervision, but agents also seized large amounts of drugs from these locations at the culmination of this investigation.   PSR ¶¶ 87-88.   The defendant's use of stash locations demonstrate his sophistication with drug trafficking and awareness of the dangers of drug dealing.

The defendant conspired to distribute vast quantities of cocaine, with significant street value. An intercepted conversation indicated that one kilogram of cocaine could retail for approximately $33,000 - $40,000 at the time of this conspiracy. PSR ¶ 66. The defendant distributed these drugs out of his own greed, and along with his greed, he used co-conspirators, such as his own brother and Night Menard to move his cocaine. Along the way to his own enrichment, the defendant left a trail of harm, not only by roping in others to this conspiracy but also the addiction that is caused by cocaine.

The defendant's greed led him not only to drug distribution, but bank and wire fraud too. Fraud during the COVID-19 pandemic was unfortunately widespread, resulting in a massive loss to taxpayers and individuals who genuinely needed relief during the pandemic. The taxpayers who funded these relief programs deserve to know that individuals who defrauded the system are being held accountable and required to repay the money that they fraudulently obtained. The government's sentencing recommendation not only accounts for the defendant's drug trafficking conspiracy, but also for his fraudulent loan application scheme.

**B.   Characteristics of the Defendant**

The defendant is 46 years old and in relatively good health. PSR ¶¶ 156, 169-172. Further, the defendant does not appear to have any significant substance abuse history or addiction. PSR ¶¶ 178-180.

The defendant was capable of work and appeared to have a capable home renovation business. PSR ¶¶ 182, 184. Yet, the defendant's greed led him to drug distribution and bank fraud. In all, there appears to be very little mitigation in the defendant's background that would warrant a sentence out of the advisory guideline range.

9

The defendant has many supportive family members. PSR ¶¶ 161-168. Yet, when Rinvil came to the defendant after he was paroled from prison, the defendant engaged him in the drug business. While it appears the defendant has the support of family and friends, he recruited family and friends to engaged in bank fraud so that he could charge them a fee for the loan application. The defendant's greed not only led to his own indictment, but also his family and friends.

### C. Specific and General Deterrence

A significant sentence of imprisonment is warranted to deter others from becoming involved in cocaine trafficking as the dangers associated with drug dealing cannot be overstated. Individuals tempted to engage in drug trafficking must understand that *any* involvement, no matter how slight, will have immediate and harsh consequences. The defendant may have thought that he was only facilitating the movement of kilograms of cocaine. His role, however innocuous he deemed it, was in fact flooding our communities with poison. Imprisonment is necessary to send a strong warning to others who might consider profiting from the drug trade that they must resist the temptation. A sentence of imprisonment also accounts for the general deterrence achieved by punishing the defendant for his bank and wire fraud conspiracy. The government's recommendation acknowledges the additional harm the defendant caused to taxpayers during the pandemic, while not exceeding the advisory guideline sentencing range.

Considerations of specific deterrence also support imposition of substantial incarceration. Undoubtedly, the defendant knows the dangers of drug distribution and how harmful it is to the community. The defendant knew that he needed to be careful about people coming to his "base," or stash location. The defendant trafficked in valuable drugs and insulated himself and

10

his family from the dangers of keeping these drugs at home.  A sentence of 156 months sends a powerful message to the defendant that he should use his care, attention, and efforts to productive means of employment, not destructive drug dealing and fraudulent scheming.

### III.     FORFEITURE AND FINE

The parties have agreed that the "Defendant understands that the Court will, upon acceptance of the Defendant's guilty plea, enter an order of forfeiture as part of the Defendant's sentence, and that the order of forfeiture may include assets directly traceable to the Defendant's offense."  Doc. 90, 144, ¶ 7.  The parties have further agreed that forfeiture will be determined at sentencing and that there is no further agreement to the amount of restitution or forfeiture.  In the bank and wire fraud conspiracy (21-cr-10338), the government has filed a motion for forfeiture in the amount of $40,984 reflecting the two fraudulent Payroll Protection Program loans that the defendant obtained.  Doc. 93.  The government further recommends restitution to be paid jointly and severally with his co-conspirator in the bank and wire fraud scheme to the balance of $124,440.  PSR ¶ 100, p. 48.

Finally, $256,204.14 was seized from the defendant from a bank account where the defendant co-mingled personal and business funds.  After subtracting the forfeiture and restitution amounts ($165,424), the government recommends that the defendant be ordered to pay a fine of $90,780.14 in the drug conspiracy case, which is within the guideline fine range of $35,000 to $10,000,000.  PSR ¶ 203, Doc. 411 at 3.  The government is not seeking a forfeiture money judgment in the drug conspiracy case (21-cr-10231).

## IV.     CONCLUSION

The government's sentencing recommendation takes into account the various factors set forth in § 3553(a) and the sentencing guidelines.   The United States recommends that the Court sentence the defendant to 156 months, followed by five years of supervised release, and forfeiture and fines as discussed above.   The defendant must also be ordered to pay a mandatory special assessment of $400.

                          Respectfully submitted,

                          JOSHUA S. LEVY
                          Acting United States Attorney

By:   */s/ Philip C. Cheng*
       Philip C. Cheng
       Assistant U.S. Attorney
       1 Courthouse Way, Suite 9200
       Boston, MA   02210
       (617) 748-3101

Dated:   June 17, 2024

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be sent to those indicated as non-registered participants.

      */s/ Philip C. Cheng*
Philip C. Cheng
Assistant United States Attorney

Date:   June 17, 2024